UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**

LINDA SUE WHITE,           )
                           )
    Plaintiff,          )          Civil No. 5:18-cv-362-JMH
                           )
V.                         )
                           )
ANDREW SAUL, Commissioner  )          **MEMORANDUM OPINION**
of Social Security,[1]     )              **AND ORDER**
                           )
    Defendant.          )

                  ** ** ** ** **

      Plaintiff Linda Sue White brings this action under 42 U.S.C. § 405(g) to challenge Defendant Commissioner's final decision denying Plaintiff's application for Social Security Disability Insurance Benefits. [DE 1]. The specific matters currently before the Court include Plaintiff's Motion for Summary Judgment [DE 15] and Defendant's Motion for Summary Judgment [DE 19]. Both matters are now ripe for decision, and for the reasons discussed below, Plaintiff's Motion for Summary Judgment [DE 15] will be denied, and Defendant's Motion for Summary Judgment [DE 19] will be granted. Accordingly, the Court will affirm the Commissioner's decision, as it is supported by substantial evidence.

---

[1] On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social Security. When this action was filed, Nancy Berryhill was serving as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Saul is automatically substituted as a party.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On January 13, 2014, Plaintiff filed a Title II application for disability insurance benefits, alleging her disability began on November 1, 2013. [Tr. 94-96, 268]. At the time of Plaintiff's alleged disability onset date, she was 44 years old. [Tr. 95]. Plaintiff earned a GED, a high school equivalency diploma, and her past relevant work was as a gas station attendant, daycare provider, and cook. [Tr. 269]. In Plaintiff's application materials, she initially alleged she was unable to work due to having Parkinson's disease and a nervous breakdown. [Tr. 95, 268].

Plaintiff's treatment notes show that on November 24, 2013, she was voluntarily admitted to a hospital for three (3) days following an attempted overdose. [Tr. 641-56]. On January 20, 2014, Plaintiff reported that she could get her child up for school, do light household cleaning, and spent most of her days alone because "being around people ma[de] [her] upset." [Tr. 287-95]. As will be discussed further herein, on February 13, 2014, Plaintiff was evaluated by Robert W. Genthner, Ph.D. [Tr. 597-607]. On August 17, 2014, Plaintiff was admitted to another hospital for four (4) days for care due to severe panic attacks, suicidal ideation, and self-mutilating behavior. [Tr. 674-82]. Following Plaintiff's inpatient care, she continued receiving mental health care. [Tr. 714-31, 819-26, 827-61].

Plaintiff's claims were denied initially and on reconsideration. [Tr. 94, 107]. After a June 8, 2015, hearing [Tr. 64-93], on July 31, 2015, an Administrative Law Judge ("ALJ") reviewed the evidence of record and denied Plaintiff's application. [Tr. 124-41]. However, on August 3, 2016, the Appeals Council vacated the ALJ's July 31, 2015, decision [Tr. 124-41] and remanded this case for further consideration of Plaintiff's maximum residual functional capacity ("RFC"), the medical opinion evidence, and the vocational evidence. [Tr. 142-46].

On January 30, 2017, the ALJ held a second hearing, [Tr. 28-63], and on May 3, 2017, the ALJ reviewed the evidence of record and denied Plaintiff's application. [Tr. 8-27]. In denying Plaintiff's application, the ALJ found Plaintiff had the following severe impairments: "non epileptic psychogenic seizure-like disorder; major depressive disorder; generalized anxiety disorder; post traumatic stress disorder; degenerative joint disease of the bilateral knees; degenerative disc disease of the cervical spine; and bilateral carpal tunnel syndrome." [Tr. 14 (citing 20 C.F.R. § 404.1520(c)]. Despite the ALJ finding Plaintiff had multiple severe impairments, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following physical limitations: no climbing of ropes, ladders, or scaffolds; occasional climbing of stairs or ramps, frequent balancing, stooping, or crouching; no kneeling or crawling; and no exposure

to concentrated vibration or industrial hazards. [Tr. 16]. The ALJ found Plaintiff's mental limitations to be as follows: requires entry-level work with simple repetitive procedures; can tolerate occasional changes in work routines; work must have no requirement for detailed or complex problem solving, independent planning, or the setting of goals; should work in an object-oriented environment with only occasional and causal contact with coworkers, supervisors, or the general public; and should not work at a fast-paced assembly line or where she is subject to rigid production quotas. [Tr. 16].

The ALJ, accepting the vocational expert's testimony, found Plaintiff was unable to perform her past relevant work as a gas station attendant, daycare provider, and cook. [Tr. 18-19]. However, again accepting the vocational expert's testimony, the ALJ determined there are other jobs Plaintiff could perform in the national economy, and Plaintiff was, therefore, found to not be disabled. [Tr. 19-20]. On April 4, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's May 3, 2017, decision [Tr. 8-27]. [Tr. 1-5].

Having exhausted her administrative remedies, on May 18, 2018, pursuant to 42 U.S.C. § 405(g), Plaintiff sought review through an action in this Court. [DE 1]. On August 21, 2018, Defendant filed an Answer [DE 9] contending, "Plaintiff's Complaint represents a Prayer for Relief to which no responsive

pleading is required. To the extent that the Prayer for Relief is deemed to allege facts to which a response is required, the Defendant denies the allegations." [DE 9, at 1]. Pursuant to the Court's August 22, 2018, Standing Scheduling Order [DE 11], Plaintiff was directed to "move for summary judgment or judgment on the pleadings within sixty (60) days." [DE 11, at 2].

As will be discussed further herein, on November 20, 2018, Plaintiff filed the present Motion for Summary Judgment [DE 15], with an accompanying Memorandum in Support [DE 15-2], arguing, in summary, that the ALJ erred by "relying on vocational testimony to fulfill his step 5 burden without properly addressing Plaintiff's objections memorandum and failing to discuss the rebuttal evidence related to the vocational expert's testimony" and "by failing to properly evaluate the medical opinion evidence consistent with the regulations, Agency policy, and Sixth Circuit precedent." [DE 15-2, at 1]. Responding to Plaintiff's Motion for Summary Judgment [DE 15], on December 20, 2018, Defendant filed a Motion for Summary Judgment [DE 19] arguing, in summary, that the ALJ's decision [Tr. 8-27] was supported by substantial evidence because "[t]he ALJ reasonably relied on vocational expert testimony that was consistent with the *Dictionary of Occupational Titles*" and "reasonably considered and weighed the opinion evidence of record." [DE 19, at 3-10].

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r*

*of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

"In determining whether the Secretary's factual findings are supported by substantial evidence, [the Court] must examine the evidence in the record 'taken as a whole . . . .'" *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 683 (6th Cir. 1992) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)). Additionally, the Court "'must take into account whatever in the record fairly detracts from its weight.'" *Wyatt,* 974 F.3d at 683 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir. 1978). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted). "If the Secretary's findings are supported by substantial evidence, then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Secretary of Health & Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

### III. DISCUSSION

Under the Social Security Act, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months

. . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential

evaluation process is used to determine whether a claimant is

disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In summary,

the five-step sequential evaluation process is as follows:

> The first step is to determine whether the claimant is
> engaged in significant gainful activity. 20 C.F.R. §
> 416.920(b). If not, the second step is to determine
> whether the claimant has a severe impairment, which is
> "any impairment or combination of impairments which
> significantly limits your physical or mental ability to
> do basic work activities." § 416.920(c). If there is a
> severe impairment, the third step is to determine
> whether the impairment meets or exceeds the criteria of
> one of the listed impairments in Appendix 1. §
> 416.920(d). If the claimant does not satisfy one of the
> listings, the [fourth step] is to determine whether the
> claimant's impairment prevents him from performing his
> past relevant work. § 416.920(e). If it does not, the
> claimant is found not disabled. [At the fifth step,]
> [i]f the impairment prevents a return to former work,
> the claimant's residual functional capacity must be
> determined, *id.,* and it is then considered in
> conjunction with the claimant's age, work experience and
> education in order to ascertain whether the impairment
> or combination of impairments prevents the claimant from
> doing other work. § 416.920(f); *see also* Subpart P,
> Appendix 2, Tables 1–3.

*Williamson v. Secretary of Health and Human Services,* 796 F.2d

146, 149 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520; 20 C.F.R.

§ 416.920.

The claimant "bear[s] the burden at step one of showing that

he is not working, at step two that he has a medically severe

impairment or combination of impairments, and at step four that

the impairment prevents him from performing his past work." *Bowen*

*v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Id.*

Since the Parties' cross Motions for Summary Judgment [DE 15; DE 19] concern the same facts, the Court will consider the Parties' Motions [DE 15; DE 19] together. The issues presently before the Court are whether the ALJ erred by "relying on vocational testimony to fulfill his step 5 burden without properly addressing Plaintiff's objections memorandum and failing to discuss the rebuttal evidence related to the vocational expert's testimony" or "by failing to properly evaluate the medical opinion evidence consistent with the regulations, Agency policy, and Sixth Circuit precedent." [DE 15-2, at 1]. The only step at issue is step five.

## A. WHETHER THE ALJ FAILED TO PROPERLY ADDRESS PLAINTIFF'S OBJECTIONS AND DISCUSS THE REBUTTAL EVIDENCE RELATED TO THE VOCATIONAL EXPERT'S TESTIMONY

Plaintiff states that following the vocational expert's testimony, "Plaintiff submitted her *Post-Hearing Memorandum of Law & Objections to the Vocation Witness' Testimony* (objections memorandum) wherein she presented specific objections/challenges to that testimony, as well as submitted rebuttal evidence." [DE 15-2, at 3 (citing [Tr. 433-73])]. Plaintiff then argues that "despite Plaintiff's constitutional and statutory right to have objections and rebuttal evidence ruled upon and considered, the

ALJ did not acknowledge or address the rebuttal evidence *at all*, despite responding to her objection regarding the reliability of the VE's testimony, and improperly overruled the objections." *Id.* (citing [Tr. 11]).

At step 5, the ALJ considers the claimant's RFC along with Plaintiff's "vocational factors ([claimant's] age, education, and work experience) to determine if [the claimant] can make an adjustment to other work." 20 C.F.R. § 404.1520 (citing 20 C.F.R. § 404.1560(c)); *see also Howard v. Comm'r. of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) ("To meet the burden of showing that [the claimant] could perform work that is available in the national economy, the Commissioner must make a finding 'supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs.'")). In making a step 5 determination, the ALJ may consider "''reliable job information'' available from various publications' as evidence of the claimant's ability to do other work 'that exists in the national economy.'" *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 603 (6th Cir. 2009) (quoting SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (citing 20 C.F.R. § 404.1566(d) and 416.966(d))). "Such publications include the [Dictionary of Occupation Titles ("DOT")], which provides 'information about jobs (classified by their exertional and skill requirements) that exist in the national

economy.'" *Id.* (quoting 20 C.F.R. § 416.969). Additionally, ALJs may also consider VE testimony "as a source of occupational evidence." *Id.* (citing SSR 00-4p, 2000 WL 1898704, at *2); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 425 (6th Cir. 2008) (citing SSR 83-14, 1983 WL 31254(Jan. 1, 1983)); 20 C.F.R. § 404.1566(e). A VE may do the following:

> A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. § 404.1560(b)(2). If the claimant is found to have an RFC that does not enable them to do their past relevant work, the ALJ uses the same RFC assessment found in 20 C.F.R. § 404.1560(b)(2) to decide if the claimant can perform other work in the national economy. 20 C.F.R. § 404.1560(c).

In the present case, in the ALJ's step 5 finding that Plaintiff could perform other work in the national economy, the ALJ relied on the January 30, 2017, testimony [Tr. 52-61] of VE Betty Hale, [Tr. 19-20], which "Plaintiff agrees . . . is consistent with the information in the DOT as it pertains to the

skill level required . . . ." [DE 15-2, at 10]. As Defendant correctly asserts, "Plaintiff's arguments . . . are nearly identical to arguments made by the claimant in *Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894 (E.D. Ky. June 19, 2018) (unpublished)." [DE 19, at 3].[2]

First, Plaintiff, like the claimant in *Kidd*, argues the ALJ erred by failing to consider rebuttal vocational evidence. Specifically, Plaintiff alleges the ALJ committed error requiring remand because the ALJ did not acknowledge the Santagati report [Tr. 471-73] submitted by Plaintiff. [DE 15-2, at 6]. Plaintiff describes Paula Santagati as "a vocational rehabilitation counselor." *Id.* Santagati posits, "a limitation of occasional interaction with coworkers and supervisors precludes all work as the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors." [Tr. 471-73]. The Santagati report in *Kidd* includes the same opinion just mentioned because both the Santagati report [Tr. 471-73] in this case and the one described in *Kidd* are one and the same. *Kidd*, 2018 WL 3040894, at *4. The Santagati report submitted in both this case and *Kidd* is a generic "opinion" from October 2015. *Id.*; [Tr. 471-73]. In *Kidd*, the Court found, "Santagati said

---

[2] Plaintiff is represented by the same counsel that represented the claimant in both *Kidd* and *Rosado v. Berryhill*, No. 4:16-cv-173, 2018 WL 816578 (E.D. Va. Jan. 22, 2018), two cases in which ALJs' negative treatments of the Santagati report were affirmed.

**utterly nothing** specific about Kidd's life, health, ability to work, or case." 2018 WL 3040894, at *4. The same is true here.

It is true that "[a] party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of facts." 5 U.S.C. § 556(d). However, the Santagati report [Tr. 471-73] is not rebuttal evidence. In fact, the October 2015 Santagati report [TR. 471-73] predates VE Hale's January 30, 2017, testimony [Tr. 52-61]. Since the Santagati report [Tr. 471-73] existed at the time of the January 30, 2017, hearing [Tr. 28-63], Plaintiff could have raised any issues related to the Santagati report [Tr. 471-73] at that time, and as stated in *Kidd*, "[T]he ALJ had no duty to convene a second hearing to pepper the VE with questions that [the claimant] could have raised initially." *Kidd*, 2018 WL 3040894, at *4 (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010); *Foster v. Halter*, 279 F.3d 348, 255-56 (6th Cir. 2001)). As demonstrated in VE Hale's testimony [Tr. 52-61], "[W]hen 'the Secretary seeks to rely on VE testimony to carry h[er] burden of proving the existence of a substantial number of jobs that plaintiff can perform, other than her past work, the testimony **must be given in response to a hypothetical question** that accurately describes the plaintiff in all significant, relevant

respects[.]'" *Id.* at *5 (quoting *Felisky v. Brown*, 35 F.3d 1027, 1035-36 (6th Cir. 1994)). ALJs may "assess dueling vocational opinions," but they are not required to do so. *Id.* at *5 (citing *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 158 (6th Cir. 2009) *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 791 (6th Cir. 2017); *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988); *Harrington v. Comm'r of Soc. Sec.*, No. 1:14 CV 1833, 2015 WL 5308245, at *6-7 (N.D. Ohio Sept. 10, 2015); *Clements v. Colvin*, No. 2:12CV144-SAA, 2013 WL 5231491, at *3-5 (N.D. Miss. Sept. 16, 2013)).

Here, the ALJ was not required to address the Santagati report [Tr. 471-73], and Plaintiff does not provide any support for her argument that the ALJ's failure to acknowledge the Santagati report [Tr. 471-73] in the ALJ's decision [Tr. 8-27] amounts to "error that necessitates remand." [DE 15-2, at 7]. Like the ALJ in *Kidd*, the ALJ in the present case reasonably relied on the testimony of a "qualified" VE whose opinion was based on Plaintiff's circumstances and what the present ALJ found to "constitute reliable information," [Tr. 11], "over Santagati's categorical, extreme views, based on nothing more than her own 'experience placing individuals with disabilities into competitive employment.'" *Kidd*, 2018 WL 3040894, at *5 (citation omitted).

Therefore, Plaintiff's arguments related to the Santagati report [Tr. 471-73] are meritless.

Second, Plaintiff's argument that "[t]he ALJ also erred by failing to appropriately address Plaintiff's objection to the vocational expert's testimony on the basis that the 'jobs offer[ed] at the hearing are no longer performed as the unskilled level pursuant to current labor market data'" is not supported by the record. Pursuant to Hearings, Appeals and Litigation Law Manual ("HALLEX") § I-2-6-74(B), "The ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." 1993 WL 751902(June 26, 2016).

Here, the ALJ referenced Plaintiff's in-hearing and post-memorandum objections "to the sufficiency of the vocational testimony, arguing in part that the testimony was based on unreliable information and that the vocational expert lacked sufficient experience and/or expertise to offer the opinions she provided." [Tr. 11]. The ALJ explicitly overruled Plaintiff's previously specified objection in the body of her decision and found "the vocational expert to be qualified, based on her training and experience . . . ." [Tr. 11]. As Defendant correctly asserts, "the ALJ explained that VE Hale was qualified and found she testified reliably as the information she provided was consistent with the information contained in the DOT." [DE 19, at 6 (citing

[Tr. 11, 26 (citing 20 C.F.R § 404.1566(d); SSR 00-4p, 2000 WL 1898704, at *2)])]. To the extent Plaintiff alleges the ALJ "only discussed one objection in any detail," [DE 15-2, at 9 (citing [Tr. 11])], as explained in *Kidd*, "The ALJ need not exhaustively catalog each argument to enter a proper ruling." *Kidd*, 2018 WL 3040894, at *5 (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("countenancing idea of tacit consideration—that an ALJ can have considered the full record without memorializing every discrete component of the decisional process in her opinion"); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) ("same"); *Loral Defense Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999) ("evaluating ALJ's factual findings 'as a whole' and approving an ALJ 'implicitly resolv[ing]' issues")).

Third, Plaintiff argues the DOT is obsolete, and the ALJ should have relied on O*NET, a website Plaintiff claims is more up to date than DOT. [DE 15-2, at 7-13]. Specifically, Plaintiff alleges, "the O*NET does not support the vocational expert's testimony that the jobs of 'Cleaner, Housekeeping' (DOT 323.687-014) and 'Conditioner-Tumbler Operator' (DOT 361.685-010) are currently unskilled jobs in the national economy" because "[t]he jobs of cleaner and laundry worker are cross-walked with SOC Codes 37-2012.00 Maids and Housekeeping Cleaners and 51-9051.00 Furnace, Kiln, Oven, Drier, and Kettle Operators and Tenders, respectively,

and according to O*NET, these jobs are currently performed at the semiskilled to skilled levels." *Id.* at 8-9. By failing to raise this issue during the January 30, 2017, hearing [Tr. 28-63], Plaintiff has waived the right to raise the argument in this Court. *Kidd*, 2018 WL 3040894, at *6 (quoting *Harris v. Comm'r of Soc. Sec.*, No. 1:11-CV-1290, 2012 WL 4434078, at *3 (N.D. Ohio Sept. 24, 2012) ("'The Sixth Circuit, along with other courts across the country, have generally recognized that a claimant's failure to object to testimony offered by a vocational expert, at the time of the administrative proceeding, waives the claimant's right to raise such issues in the district court.'")). "A claimant simply 'may not now complain' in federal court when he 'failed to cross examine' a VE on a topic 'when he had an opportunity to do so.'" *Id.* (quoting *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006)).

In addition to Plaintiff's DOT-related argument being waived, it also fails on the merits. Unlike O*NET, "the Sixth Circuit acknowledges that the SSA 'does take administrative notice of [the DOT] when determining if jobs exist in the national economy.'" *Id.* at 7 (quoting *Cunningham v. Astrue*, 360 F. App'x 606, 615-16 (6th Cir. 2010) (citing 20 C.F.R. § 404.1566(d)(1))). "The Circuit plainly holds: 'To establish that work exists in the national economy, the ALJ can rely on evidence such as the testimony of a VE and the DOT.'" *Id.* (quoting *Kyle v. Comm'r of Soc. Sec.*, 609

F.3d 847, 855 (6th Cir. 2010) ("explicitly calling the DOT, and other 'various governmental publications,' sources of 'reliable job information'")). This is precisely what the ALJ did in the present case.

"[T]he Court of Appeals in *Cunningham* (a nonbinding, split decision) cautioned that 'common sense dictates that when [DOT] descriptions appear obsolete, a more recent source of information should be consulted.'" *Id.* (quoting *Cunningham*, 360 F. App'x at 615). However, as noted by the Hon. Danny C. Reeves in *Belew v. Astrue*, "*Cunningham* is an unpublished decision by a divided panel. No subsequent Sixth Circuit opinion has questioned the reliability of VE testimony on the grounds of his or her reliance on the DOT." No. 2:11-107-DCR, 2012 WL 3027114, at *9 n.5 (E.D. Ky. July 24, 2012) (citing *Kyle v. Comm'r of Soc. Sec.,* 609 F.3d 847, 851 (6th Cir. 2010); *Anderson v. Comm'r of Soc. Sec.,* 406 F. App'x 32, 35 (6th Cir. 2010)). Moreover, since *Cunningham* is an unpublished opinion, and *Kyle* is a published opinion that was decided after *Cunningham*, *Kyle* is the controlling authority.

Here, VE Hale's testimony is consistent with a reliable source, the DOT, so the ALJ's reliance on that testimony was appropriate. "'Whether remand is appropriate in this instance boils down to whether substantial evidence supports the ALJ's conclusion that given [the claimant's] age, education, work experience, and RFC, there are jobs in significant numbers in the

national economy that [ ]he can perform.'" *Id.* at 10 (quoting *Earls v. Comm'r of Soc. Sec.,* No. 1:09 CV 01465, 2011 U.S. Dist. LEXIS 92882, at *19, 2011 WL 3652435 (N.D. Ohio, Aug. 19, 2011)). VE Hale testified that a hypothetical person with Plaintiff's background and limitations Plaintiff could perform unskilled work. [Tr. 52-61]. Even if the specific jobs VE Hale provided as examples may not fall under the present-day meaning of unskilled work, it is not unreasonable for the ALJ to rely on VE Hale's testimony to find that Plaintiff is able to perform light work with certain limitations. VE Hale's testimony provides substantial evidence to support the ALJ's finding that there are a significant number of jobs in the national economy that Plaintiff can perform.

## B. WHETHER THE ALJ FAILED TO PROPERLY EVALUATE THE MEDICAL OPINION EVIDENCE

Federal regulations provide that the Social Security Administration makes disability determinations based on "all the evidence in [the] case record." 20 C.F.R. § 404.1520(a)(3). Furthermore, the Social Security Administration is to "always consider the medical opinions in [the] case record together with the rest of the relevant evidence [they] receive." 20 C.F.R. § 404.1527(b). "In evaluating the intensity and persistence of [a claimant's] symptoms, [the Administration] consider[s] all of the available evidence from [a claimant's] medical sources and

nonmedical sources about how [a claimant's] symptoms affect [them]." 20 C.F.R. § 404.1529(c)(1).

Regarding how much weight the Administration gives medical opinions, treating sources' medical opinions are given controlling weight "on the issue(s) of the nature and severity of your impairment(s)" unless the treating sources' medical opinions are not "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not [consistent] with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2).[3] When a treating source's opinion is not given controlling weight, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544). "Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the [previously mentioned] factors in deciding the weight we give to *any* medical opinion." 20 C.F.R. § 404.1527(c) (emphasis added). Even when the treating source's opinion is not entitled to

---

[3] Medical opinions for claims filed on or after March 27, 2017 will be evaluated differently. 20 C.F.R. § 404.1520c; 82 Fed. Reg. 5844 (Jan. 18, 2017).

controlling weight, there remains a rebuttable presumption "that the opinion of a treating physician is entitled to great deference." *Id.* (citing SSR 96-2p, 1996 WL 37188, at *4 (July 2, 1996) ("'In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.'")). "[T]he ALJ must provide 'good reasons' for discounting treating physicians' opinions, reasons that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR 96-2p, 1996 WL 37188, at *5); *see also* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.").

Generally, more weight is given to the medical opinion of an examining source, such as Dr. Genthner, than to the medical opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). However, "the nature of the examining relationship is but one factor that bears on the weight to be given to a medical source opinion." *Carter v. Colvin,* 27 F. Supp. 3d 1142, 1151 (D. Col. 2014) (citing 20 C.F.R. § 404.1527(c)(1)). "[A]n administrative law judge is not bound by an examining physician's opinion and must evaluate it in the context of the expert's medical specialty and expertise, supporting evidence in the record, consistency with the record as

a whole and other explanations regarding the opinion." *Ziegler v. Astrue,* 576 F. Supp. 2d 982, 996 (W.D. Wisc. 2008) (citing *Haynes v. Barnhart,* 416 F.3d 621, 630 (7th Cir. 2005)). Furthermore, "[a]n administrative law judge can reject an examining physician's opinion if his reasons for doing so are supported by substantial evidence in the record." *Ziegler,* 576 F. Supp. 2d at 996 (citing *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003)). "When the record contains well supported contradictory evidence, even a treating physician's opinion 'is just one more piece of evidence for the administrative law judge to weigh.'" *Ziegler,* 576 F. Supp. 2d at 996 (quoting *Hofslien v. Barnhart,* 439 F.3d 375, 377 (7th Cir. 2006)).

"[S]tate agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence." *Hoskins v. Commissioner of Social Sec.,* 106 F. App'x 412, 415 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "Thus, under certain circumstances, an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating or examining source." *Miller v. Commissioner of Social Sec.,* 811 F.3d 825, 834 (6th Cir. 2016) (citing Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3; *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 409 (6th Cir. 2009)). "Such circumstances include where the non-examining source's opinion 'is based on a review of a complete case record.'" *Miller,*

811 F.3d at 834 (citing Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3). "In short, '[a]n ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence.'" *Lester v. Chater,* 61 F.3d 821, 831 (9th Cir. 1995) (citing *Roberts v. Shalala,* 66 F.3d 179, 184 (9th Cir. 1995)).

In the present case, the ALJ gave "little weight" to Dr. Genthner's opinion [Tr. 597-607] and Global Assessment of Functioning ("GAF") score, and she gave "great weight" to the state agency consultants' opinions. [Tr. 18]. Plaintiff argues the ALJ's decision to give Dr. Genthner's opinion [Tr. 597-607] and GAF score little weight and failure to consider the state agency consultants' opinions constitutes error. [DE 15-2, at 13-22]. The Court will consider each of Plaintiffs arguments in turn.

## 1. THE ALJ'S CONSIDERATION OF THE STATE AGENCY CONSULTANTS' OPINIONS

Plaintiff's argument that the ALJ erred by not addressing or considering the state agency consultants' opinions in her decision is unsupported by the record. Specifically, the ALJ's decision [Tr. 8-27] stated, "The [ALJ] gives great weight to the state agency consultants' assessments insofar as they indicate that the claimant is not disabled but concludes that the combined effect of the claimant's impairments limit her as set forth in the [RFC]."

[Tr. 18]. Moreover, like the ALJ, the state agency consultants concluded Plaintiff was not disabled, and the ALJ assessed limitations which were as great or greater than those of the state agency consultants. *See* [Tr. 16-18, 102-06, 119-22]. Therefore, not only did the ALJ address and consider the state agency consultants' opinions in the body of her decision, the ALJ's RFC finding was consistent with the opinions of the state agency consultants, so any error would be harmless. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 401-02 (6th Cir. 2014) (holding that when an ALJ fails to consider an opinion that is consistent with the ALJ's RFC finding, "any error is harmless"). Since Plaintiff did not challenge the ALJ's decision to assign greater weight to the state agency consultants' opinions than to that of Dr. Genthner, the examinining source, the Court will not consider that issue, as it was not raised.

## 2. THE ALJ'S WEIGHING OF DR. GENTHNER'S OPINION

As previously mentioned, on February 13, 2014, Dr. Genthner performed a psychological evaluation, and Plaintiff stated that while she had difficulty sleeping, she could do the following: "simple household chores such [as] cleaning;" use the microwave; "drive but chooses not to because of anxiety;" exercise; read the newspaper; use simple household tools; manage and count money; make simple purchases; bathe; and manage her hygiene needs. [Tr. 599-602]. Dr. Genthner indicated that Plaintiff "presented . . .

agitated, anxious and on the verge of a panic attack. She nearly hyperventilated twice during the exam and required support and relaxation instruction." [Tr. 604]. Dr. Genthner diagnosed Plaintiff as follows: "Panic Disorder (Moderate to Severe);" "Post Traumatic Stress Disorder;" and "[History of] Major Depression Recurrent." [Tr. 604]. Additionally, Dr. Genthner assigned Plaintiff a GAF score of 45. [Tr. 604].

Dr. Genthner concluded Plaintiff's "capacity to retain and follow simple instruction," "ability to understand, retain and follow detailed or complex instructions," "capacity to make simple work-related decisions," and "ability to be aware of normal hazards and take appropriate precautions" either are or appear "adequate." [Tr. 605].[4] Dr. Genthner further concluded Plaintiff was "moderately limited" in the following work-related areas: "[a]bility to carry out and persist at a simple repetitive task without special supervision;" "[a]ttention/concentration skills described by her test results and presentation;" "[h]er capacity to relate to employers and coworkers;" and "[c]apacity to work with others without being distracted or overwhelmed." [Tr. 605].[5] Lastly, Dr. Genthner found, "Simple changes in routine may be overwhelming or debilitating to this claimant," and "Her capacity

---

[4] Dr. Genthner defines "adequate" as "no problems noted on this exam in this area." [Tr. 604].
[5] Dr. Genthner defines "moderately limited" as follows: "Claimant would require significant structure and/or modifications in traditional work settings such as those found in a sheltered workshop." [Tr. 604].

to tolerate stress and pressure associated with day-to-day work activity is moderately to markedly limited as she presented today." [Tr. 605].[6]

The ALJ gave little weight to Dr. Genthner's February 13, 2014, opinion [Tr. 597-607] because "it was rendered shortly after the claimant's attempted overdose," and "it is inconsistent with the claimant's more recent mental health treatment which has been conservative." [Tr. 18]. Pursuant to 20 C.F.R. § 404.1527(c)(3), "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Secretary of Health & Human Servs.,* 964 F.2d 524, 528 (6th Cir. 1992) ("the ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'")); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994) (citing *Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) ("[Treating physicians'] opinions are only accorded great weight when they are supported by sufficient clinical findings and are

---

[6] Dr. Genthner defines "markedly limited" as follows: "Claimant has no useful ability to function in this area." [Tr. 604].

consistent with the evidence.")). "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

Not only was Dr. Genthner's opinion not supported by any presented evidence other than his own examination of Plaintiff, none of Plaintiff's subsequent mental health treatments found her to have the severe limitations Dr. Genthner suggested, especially Dr. Genthner's finding that "[Plaintiff's] capacity to tolerate stress and pressure associated with day-to-day work activity is moderately to markedly limited as she presented today." [Tr. 605]; *see also* 20 C.F.R. § 404.1527(c)(3). While Dr. Genthner may have correctly found Plaintiff to lack the capacity to handle the stress and pressure associated with working, he specified that was Plaintiff's capacity "as she presented today," which was less than three (3) months after Plaintiff's attempted overdose. [Tr. 605]. Undoubtably, Plaintiff was in a poor mental state shortly after her attempted overdose in November 2013. However, as the ALJ found, and the Court will discuss, Plaintiff's subsequent mental health treatment shows Plaintiff's mental state improved over time with treatment and medication.

As early as March 31, 2014, in a follow up appointment at Kentucky River Community Care, Plaintiff reported that her medication improved her sleep and helped relieve her anxiety and taking Celexa instead of Zoloft for anxiety made a "HUGE

DIFFERENCE." [Tr. 18, 668]. Plaintiff testified she stopped receiving counseling because "[t]he lady that does the counseling where I went to before, she quit. Another lady took over and she is someone that I used to know and not comfortable talking to her, and it would be a conflict of interest if she took me as a client." [Tr. 48]. Plaintiff further testified that she did not seek counseling elsewhere because the next closest facility would have been forty-five (45) miles away in Winchester, KY. [Tr. 49]. Plaintiff asserts, "Plaintiff continues to take psychotropic medications; she testified that she is currently taking Wellbutrin. In the past, she has taken Zoloft, Vistaril, Trazodone, Celexa and Seroquel to treat her anxiety and depression." [DE 15-2, at 19 (internal citations omitted) (citing [Tr. 33, 521, 549, 553, 587, 601, 667, 658, 661, 665, 667, 669, 674, 806, 940, 1014])]. The record shows Plaintiff has not been hospitalized for a mental health-related issue since August 2014, when she experienced severe panic attacks, suicidal ideation, and self-mutilating behavior. [Tr. 674-82]. [Tr. 674-82].

Following Plaintiff's August 2014 hospitalization, her care was, indeed, conservative, consisting largely of follow up appointments at United Clinics of Kentucky to receive care for her anxiety and depression-related symptoms and manage her medications. [Tr. 714-18, 827-61]. On October 14, 2015, Plaintiff returned to Kentucky River Community Care for counseling and

continued receiving treatment there until December 10, 2015. [Tr. 18, 819-26]. Between October 14, 2015 and December 10, 2015, Plaintiff reported crying spells, irrational and negative thoughts, paranoia, anxiety, and depression. [Tr. 18, 819-26]. After Plaintiff was unable to be contacted, she was discharged from Kentucky River Community Care. [Tr. 18]. Even after being discharged from Kentucky River Community Care, Plaintiff continued her conservative treatment at United Clinics of Kentucky. [Tr. 18, 827-61]. At no point after Plaintiff's August 2014 hospitalization did Plaintiff report suicidal ideation.

"Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(i). Here, in addition to Dr. Genthner's examination being performed a few months after Plaintiff's attempted overdose, Dr. Genthner's February 13, 2014, examination was the only time he examined Plaintiff, and that examination occurred more than three (3) years prior to the ALJ's May 3, 2017, decision [Tr. 8-27]. Instead of heavily relying on Dr. Genthner's sole examination of Plaintiff that occurred years before the ALJ's decision [Tr. 8-27], the ALJ opted to give more weight to "the claimant's more recent mental health treatment which has been conservative." [Tr. 18]. After reviewing the whole record, the Court finds there is substantial evidence to support the ALJ's decision to accord Dr.

Genthner's opinion [Tr. 597-607] little weight due to his opinion being inconsistent with Plaintiff's subsequent treatment.

In addition to the ALJ giving little weight to Dr. Genthner's opinion [Tr. 597-607], the ALJ gave little weight to Dr. Genthner's "scores on the [GAF] scale of record as they are inconsistent with the claimant's recent conservative mental health treatment and her ability to care for her child during the pendency of this claim." [Tr. 18]. Dr. Genthner's score on the GAF scale is inconsistent with Plaintiff's subsequent treatment. The Court has already addressed the inconsistencies between Dr. Genthner's opinion [Tr. 597-607] and Plaintiff's other medical records, so there is no need to do so again. However, the Court will address Plaintiff's arguments related to the ALJ discounting Dr. Genthner's GAF scale score based on Plaintiff's ability to care for her child.

"Plaintiff acknowledges that she 'got [her daughter] up for school[,]" but she argues, "Waking up a teenager to go to school certainly is not the equivalent of performing work activities on a *sustained basis* during an 8-hour work day." [DE 15-2, at 20 (citing [Tr. 288]; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("But the ALJ does not contend, and the record does not suggest, that Gayheart could do any of these activities on *a sustained basis,* which is how the functional limitations of mental impairments are to be assessed.")). While that may be true, daily activities are one factor ALJs may consider when determining

the extent to which a claimant's symptoms limit their capacity to work. 20 C.F.R. § 404.1529(c)(3)(i); *see also Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (unpublished) (holding the claimant's "activities around the house" and medication only treatment regimen constituted "good reasons" for discounting a treating doctor's opinion)).

Plaintiff contends that her "daughter helped *her* go grocery shopping and performed household chores[,]" and "[t]he ALJ erred in failing to consider this factor in his analysis." [DE 15-2, at 20 (citing [Tr. 79, 209]; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d at 249)]. Plaintiff further alleges, "[T]he ALJ mischaracterized and/or presented a highly selective recitation of Plaintiff's activities." *Id.* Specifically, Plaintiff argues the following:

> The ALJ stated that Plaintiff taught Sunday school classes during the pendency of this claim. Tr. 17. However, Plaintiff testified that she has not taught Sunday school since her seizures began. Tr. 78-79. The ALJ stated that Plaintiff "testified at the hearing that her [seizure] spells were becoming less frequent." Tr. 17. In actuality, Plaintiff testified that she could not state the frequency of her seizures episodes because "I don't remember when. . . I have it," although she feels that she remembers more of her days. Tr. 41. The ALJ also stated that Plaintiff "has indicated that she continues to drive, although less often than she once did." Tr. 17. Plaintiff testified at the 2017 hearing that she drives "not often." Tr. 42. As indicated above, Plaintiff rarely goes out, which would suggest that she rarely drives. In fact, every other time she was asked if she drove as part of this claim, she reported that she did not drive. Tr. 79 (2015 hearing); 291 (Adult Function Report); 602 (consultative examination).

*Id.* at 20-21.

Plaintiff's mischaracterization allegations boil down to semantics and do not show the ALJ mischaracterized Plaintiff's activities. Additionally, many of the allegedly mischaracterized statements Plaintiff references from the ALJ's decision [Tr. 8-27] are followed by the ALJ's assertion that "[w]hile [Plaintiff] has endorsed more recent difficulty with social activities, she has nevertheless stopped treating at the local Kentucky River Community Care mental health clinic." [Tr. 17]. This acknowledgement suggests the ALJ considered Plaintiff's alleged difficulties related to the activities and discounted them due to Plaintiff voluntarily ceasing contact with Kentucky River Community Care.

The ALJ's analysis of the evidence, treatment notes, and medical opinions, along with her explanation that Dr. Genthner's opinion [Tr. 597-607] and GAF scale score were inconsistent with Plaintiff's more recent mental health treatment and Plaintiff's daily activities, were sufficiently specific to explain the weight given to Dr. Genthner's opinion [Tr. 597-607] and GAF scale score and the reasons for giving that weight. *See Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 37188, at *5). Even if the Court may have given Dr. Genthner's opinion [Tr. 597-607] and GAF scale score different weight than the ALJ, the ALJ's decision [Tr. 8-27] must be affirmed because it was supported by substantial evidence, and she provided good reasons for according Dr.

Genthner's opinion [Tr. 597-607] and GAF scale score little weight. *Longworth*, 402 F.3d at 595 (citations omitted); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854-55 (6th Cir. 2010) ("Even if this Court might have reached a contrary conclusion of fact, the Commissioner's decision must be affirmed so long as it is supported by substantial evidence.").

**IV. CONCLUSION**

For the foregoing reasons, the Court, having found no legal error on the part of the ALJ and that her decision is supported by substantial evidence,

**IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 15] is **DENIED**;

(2) Defendant's Motion for Summary Judgement [R. 19] is **GRANTED**;

(3) Defendant Commissioner's decision denying Plaintiff's disability claim is **AFFIRMED**;

(4) This matter is **DISMISSED** and **STRICKEN FROM THE COURT'S ACTIVE DOCKET**; and

(5) Judgment in favor of the Defendant will be **ENTERED** separately.

This the 25th day of September, 2019.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge